**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ocean Garden Products Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>Blessings Incorporated, et al.,<br><br>Defendants. | No. CV-18-00322-TUC-RM<br><br>Consolidated with:<br>No. CV-19-00284-TUC-RM<br><br>**ORDER** |

On July 2, 2018, Plaintiff Ocean Garden Products Inc. ("Plaintiff" or "OG") initiated a lawsuit against Defendants Blessings, Inc. ("Blessings") and David Mayorquin ("David"), alleging breach of contract and other claims (Doc. 1 in case number CV-18-322)[1] (the "Contract Action"). The operative pleadings in the Contract Action are Plaintiff's First Amended Complaint (Doc. 86), which adds Abraham Mayorquin and ADAB Ocean Harvest, S. De R.L. De C.V. ("ADAB Mexico") as defendants; Defendants' Answer to First Amended Complaint and Counterclaims (Doc. 92); and Plaintiff's Answer to the Counterclaims (Doc. 109).

On May 22, 2019, Plaintiff initiated a separate lawsuit against Defendants David, David's wife Amanda Lopez Vergara, Abraham, Abraham's wife Viviana Lopez, ADAB Mexico, ADAB Ocean Harvest LLC ("ADAB Tucson"), and Pacific Ocean Harvest S. De R.L. De C.V. ("Pacific Ocean Harvest"), alleging claims under Arizona's Uniform Fraudulent Transfer Act ("UFTA"), A.R.S. 44-1004, *et seq.* (Doc. 1 in case number CV-

---

[1] All record citations herein refer to the page numbers generated by the Court's electronic filing system and, unless otherwise noted, to the docket in CV-18-322.

19-284) (the "UFTA Action").  The parties jointly moved to consolidate the Contract Action and UFTA Action (Doc. 144), and the Court granted consolidation on June 24, 2019 (Doc. 146).  The operative pleadings in the UFTA Action are Plaintiff's Amended Complaint (Doc. 154), which adds Blessings as a defendant, and Defendants' Answer to the Amended Complaint (Doc. 206).

Currently pending before the Court is Plaintiff's Motion for Preliminary Injunction.  (Doc. 149.)[2]  Defendants filed a Response (Doc. 150) and a Supplemental Response (Doc. 158), and Plaintiff filed a Reply (Doc. 167).  The Court held an evidentiary hearing on July 23, 2019 and August 22-23, 2019.  (Docs. 177, 194, 202.)  Based upon an oral stipulation of the parties at the July 23, 2019 hearing, the Court entered temporary injunctive relief pending resolution of Plaintiff's Motion for Preliminary Injunction.  (Doc. 180.)

**I.  Background**

Blessings is an Arizona corporation located in Tucson.  It is wholly owned by brothers David and Abraham, and David serves as its President and Chief Executive Officer ("CEO").  Blessings began as a seafood distributor for local restaurants in Tucson.  In 2006, it purchased a processing facility located on Highland Avenue.  In approximately 2008, Blessings began selling processed shrimp to national chains such as Costco and Trader Joe's.

In or around 2011 or 2012, Blessings set up ADAB Mexico to process shrimp for Blessings as a maquiladora.  ADAB Mexico is a Mexican company located in Nogales, Mexico.  Like Blessings, it is wholly owned by David and Abraham.  A maquiladora agreement dated May 31, 2012 is signed by David on behalf of both Blessings and ADAB Mexico.  According to David, in 2012 and 2013, Blessings paid ADAB Mexico processing fees calculated pursuant to the maquiladora agreement as ADAB Mexico's total operating expenses plus a 6.5% markup.  Starting in 2014, Blessings began paying ADAB Mexico processing fees calculated as 80 cents per pound of shrimp processed by

---

[2] Also pending are numerous Motions to Dismiss (Docs. 99, 110, 156, 157), which will be resolved separately.

ADAB Mexico. Defendants have not introduced an addendum to the original maquiladora agreement or any subsequent maquiladora agreements.

In 2012, David learned that Blessings was the subject of a criminal investigation involving sea cucumber exportation, and he retained criminal defense counsel. According to Blessings' audited 2012 financial statements, the company's net income in 2012 was $1,038,162 and it paid processing fees totaling $674,699 to ADAB Mexico. The financial statements reflect a shareholder loan receivable of $84,394.

On August 28, 2013, Blessings executed an unsecured promissory note in favor of OG for the principal sum of $1,500,000. According to Celso Lopez, the Chief Financial Officer of OG, Blessings was supposed to use the loan to purchase domestic shrimp to be processed by Blessings and sold to OG at a discounted price, with the discount credited against the balance of the loan. According to David, the loan was used not only to purchase domestic shrimp but to purchase equipment and supplies, and to hire and train personnel, in service of the domestic shrimp program. Blessings delivered $470,000 worth of shrimp pursuant to the loan agreement, but $240,000 worth was returned to Blessings due to quality issues. After accounting for the returned shrimp, the unpaid balance owed under the 2013 note was $1,273,633.40. According to Blessings' audited 2013 financial statements, the company suffered net losses of $980,822 in 2013 and paid processing fees of $1,924,367 to ADAB Mexico. It had $7,490,535 in total assets and $6,856,667 in total liabilities. The financial statements reflect a shareholder loan receivable of $740,968.

The unpaid balance of the 2013 promissory note was subsumed into a June 1, 2014 unsecured promissory note executed by Blessings in favor of OG. Blessings did not pay the amount due under the 2014 note. Blessings also began defaulting on invoices for shrimp delivered to Blessings by OG during the 2014-2016 time frame.[3] According to Blessings' audited 2014 financial statements, the company's net income in 2014 was $236,541, and it paid processing fees of $1,156,874 to ADAB Mexico. It had $9,942,012

---

[3] Plaintiff has presented evidence of 18 unpaid invoices, along with proof of deliveries.

in total assets and $9,179,497 in total liabilities. The financial statements reflect a shareholder loan receivable of $823,417. For the first time, the financial statements also reflect a note receivable from ADAB Mexico in the amount of $1,312,270, of which $480,997 was classified as a current asset based on management's averment that this portion of the note was expected to be repaid in the near future.[4]

In approximately 2015, Blessings lost Trader Joe's as a customer after Trader Joe's rejected shrimp delivered by Blessings due to high sodium levels. The shrimp rejected by Trader Joe's had been processed by Blessings after being purchased from OG. OG took possession of the shrimp for a period of time before asking Blessings to attempt to resell it. The parties dispute responsibility for the quality issues that caused Trader Joe's to reject the shrimp.

On November 18, 2015, Blessings sent OG a proposed repayment plan containing provisions for the repayment of Blessings' debt to OG. Blessings alleges that the proposal resulted in a modification agreement which OG later breached; OG denies entering into any modification agreement. The record does not contain a written modification agreement signed by Blessings and OG, although it contains some conflicting evidence regarding whether the parties operated for a time pursuant to the provisions of Blessings' November 18, 2015 proposal. According to Blessings' draft 2015 financial statements, the company's net income in 2015 was $15,392, and it paid processing fees of $480,997 to ADAB Mexico. It had total assets of $7,767,322 and total liabilities of $7,033,030. The financial statements reflect a loan receivable from ADAB Mexico of $2,677,683, classified entirely as a current asset, and a shareholder loan receivable of $838,417.

In January 2016, Lance Leonard replaced Javier Corella as the CEO of OG. Later that year, OG sued Blessings in Arizona state court. OG obtained a default judgment in

---

[4] Blessings' 2012 and 2013 audited financial statements reflect a loan receivable from a related party of $49,700, without specifying the identity of the related party. That same loan receivable is reflected in the 2014 audited financial statements, but the 2014 audited financial statements also reflect a note receivable from ADAB that does not appear in the earlier financial statements.

- 4 -

that lawsuit, but the judgment was later overturned on the grounds of insufficient service and OG voluntarily dismissed the case. Also in the year 2016, Trader Joe's sued Blessings in arbitration for delivering contaminated shrimp.[5] By the end of 2016, the loan receivable from ADAB Mexico had increased to approximately $2.99 million.

In 2017, David and Blessings were publicly indicted on charges arising from the sea-cucumber investigation. Costco, Blessings' largest customer, stopped doing business with Blessings after the criminal indictment was publicly reported. Plaintiff and Defendants dispute whether OG was aware of the criminal investigation prior to the indictment becoming public. Ultimately, David pled guilty to a misdemeanor and Blessings pled guilty to a felony, and they were ordered to pay a criminal fine of nearly $1 million. In order to separate himself from David after the indictment, Abraham founded ADAB Tucson, which resells shrimp, and Pacific Ocean Harvest, which processes shrimp for ADAB Tucson.

ADAB Mexico no longer does any business with Blessings; however, it continues to operate and process food products for other customers. According to David, ADAB Mexico's profits in 2018 were approximately $600,000. Although David and Blessings' controller Erin McGinnis at one point concluded that the ADAB Mexico loan was uncollectable, ADAB Mexico has recently made irregular payments on the loan.

Blessings no longer processes shrimp but continues to operate as a seafood distributor for local restaurants in Tucson. Although Blessings' current finances are not clear from the record presently before the Court, it appears that the company is insolvent and has been since at least 2017. David testified at the preliminary injunction hearing that, if Ocean Garden were to obtain a judgment for $2.4 million in this case, neither David, Blessings, nor ADAB Mexico would be able to pay the judgment. OG seeks damages of over $5 million in these consolidated actions. (*See* Docs. 86, 154.)

Blessings owns the processing facility on Highland Avenue, subject to a mortgage. It also owns a vacant lot on Thornydale Road, free and clear of a mortgage. The

---

[5] The Trader Joe's lawsuit was apparently instigated by an email sent to Trader Joe's by an anonymous whistleblower purporting to be a former Blessings employee.

- 5 -

1  Highland Avenue and Thornydale properties are encumbered by a National Bank of
2  Arizona loan and by the criminal fine owed to the United States government. David and
3  Abraham each own a residential property in Tucson, subject to mortgages. Defendants
4  have not disclosed or presented evidence showing how much equity exists in these four
5  properties.

**II.    Discussion**

Plaintiff seeks preliminary injunctive relief with respect to the UFTA Action. As an initial matter, Defendants argue that Plaintiff should have sought a writ of attachment under A.R.S. § 12-1521 rather than a preliminary injunction. However, Defendants concede that Arizona's UFTA expressly provides for the remedy of injunctive relief. Furthermore, the Court finds that the determination of whether to grant preliminary injunctive relief in this matter is governed by federal, rather than state, law.

The court may issue a preliminary injunction on notice to the adverse party pursuant to Federal Rule of Civil Procedure 65. In determining whether to grant preliminary injunctive relief, the Court considers: (1) whether the movant is likely to succeed on the merits; (2) whether the movant is likely to suffer irreparable harm in the absence of preliminary injunctive relief; (3) the balance of equities between the parties; and (4) the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit follows a "sliding scale" approach to preliminary injunctions. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). Under this approach, a weaker showing as to the likelihood of success on the merits may be offset by a stronger showing with respect to the balance of equities. *Id.*

**A.    Likelihood of Success on Merits**

In the UFTA Action, Plaintiff asserts claims under A.R.S. § 44-1004 and A.R.S. § 44-1005, in addition to conspiracy. Section 44-1004 provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation under any of the following:
> 1. With actual intent to hinder, delay or defraud any creditor of the debtor.

- 6 -

> 2. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:
> (a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
> (b) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

A.R.S. § 44-1004(A). In determining actual intent, the Court may consider, among other factors, whether:

> 1. The transfer or obligation was to an insider.
> 2. The debtor retained possession or control of the property transferred after the transfer.
> 3. The transfer or obligation was disclosed or concealed.
> 4. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
> 5. The transfer was of substantially all of the debtor's assets.
> 6. The debtor absconded.
> 7. The debtor removed or concealed assets.
> 8. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
> 9. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
> 10. The transfer occurred shortly before or shortly after a substantial debt was incurred.
> 11. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

A.R.S. § 44-1004(B).

Under A.R.S. § 44-1005, a transfer made by a debtor "is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."

If a transfer is voidable under the UFTA, a creditor "may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less." A.R.S. § 44-1008(B). The judgment may be entered against the "transferee of the asset or the person for whose benefit the transfer was made." *Id.* at § 44-1008(B)(1).

Plaintiff has established a likelihood of success in proving that it is a creditor for

purposes of the UFTA.  Although Blessings disputes responsibility for shrimp quality problems related to some of its debt to OG, and alleges that OG caused it damages by breaching a modification agreement, Plaintiff's evidence indicates that Blessings failed to pay the balance due under the 2014 promissory note executed in favor of OG and failed to pay 18 invoices for shrimp delivered by OG.

Plaintiff has also established a likelihood of success in proving that assets transferred from Blessings to ADAB Mexico were intentionally or constructively fraudulent.  Although Defendants may ultimately prove that the asset transfers were lawful, Defendants' explanations for the asset transfers from Blessings to ADAB Mexico are difficult to reconcile with the current record.  Defendants argue that Blessings provided money, equipment, training, and personnel services to ADAB Mexico in order to help establish ADAB Mexico as a maquiladora in the 2011-2012 time period. However, Blessings' financial statements indicate that in the 2014-2015 time period—after ADAB Mexico had already been established as a maquiladora—Blessings transferred over $2.5 million to ADAB Mexico in the form of a "note receivable."  The "note receivable" is unsecured and non-interest-bearing.  Defendants have not identified any evidence that Blessings received a promissory note or other loan documents from ADAB Mexico in exchange for the loan, nor evidence showing that Blessings received other consideration in exchange for the loan.  Although there is evidence that ADAB Mexico has recently made payments on the loan, those payments are irregular.  They are not made pursuant to any formal loan repayment terms; instead, David simply directs ADAB Mexico to wire money to Blessings when Blessings needs cash to pay expenses.

Blessings' financial statements reflect a shareholder loan receivable that increased by over half a million dollars in 2013 and continued to increase, though by smaller amounts, in 2014 and 2015. Defendants aver that the shareholder loan constituted money taken from Blessings and provided to ADAB Mexico for equipment purchases, and that the transfer was classified as a shareholder loan based on the suggestion of an accountant. Defendants have not presented evidence showing how the shareholder loan was

accounted for by ADAB Mexico, nor evidence showing that ADAB Mexico intends to repay David and Abraham or that David and Abraham intend to repay Blessings. In addition to transferring money for equipment purchases, it appears that Blessings also transferred some of its own equipment to ADAB Mexico, although it is not clear when those equipment transfers occurred. Defendants aver that title to the transferred equipment remains in Blessings' name, but they have not presented any evidence showing that ADAB Mexico has made lease payments or provided other consideration in exchange for its use of the equipment.

Defendants aver that wire transfers from Blessings to ADAB Mexico reflect payments of processing fees, but the current record does not support the conclusion that all wire transfers were made for the purpose of paying processing fees. Although Blessings' financial statements reflect the payment of significant processing fees to ADAB Mexico, those processing fees are accounted for separately from the "note receivable" from ADAB Mexico, and testimony at the evidentiary hearing indicated that processing fees were credited against ADAB Mexico's outstanding loan rather than paid in cash by Blessings. Although a portion of the ADAB Mexico loan appears to constitute salaries paid by Blessings but attributed to ADAB Mexico—and thus does not reflect direct cash transfers—the current record indicates that a significant portion of the loan does reflect direct cash transfers from Blessings to ADAB Mexico.

With respect to actual intent under A.R.S. § 44-1004(A)(1), the current record contains evidence of numerous badges of fraud. Blessings transferred cash and equipment to an insider; both Blessings and ADAB Mexico are wholly owned by David and Abraham. *See* A.R.S. § 44-1004(B)(1). Blessings apparently retained title to at least some of the equipment sent to ADAB Mexico, but it does not appear to have received any consideration, such as lease payments, in exchange for ADAB Mexico's use of the equipment. *See id.* at § 44-1004(B)(2), (B)(8). Furthermore, David retained control over the cash transferred from Blessings to ADAB, dictating whether and when ADAB Mexico makes repayments to Blessings. *See id.* at § 44-1004(B)(2). Although some

assets may have been transferred as early as 2011, the record indicates that the majority of asset transfers occurred in the 2013-2015 time period, when Blessings was under criminal investigation, had incurred substantial debt to OG, and had been threatened with collection efforts by OG. *See id.* at § 44-1004(B)(4), (B)(10). Transfers occurred shortly before and after Blessings was sued in arbitration by Trader Joe's, sued in state court by OG, publicly indicted, and sentenced to a significant criminal fine. *See id.* at § 44-1004(B)(4). The assets transferred from Blessings to ADAB Mexico were removed from the jurisdiction of courts in the United States and thus shielded from creditors such as OG. *See id.* at § 44-1004(B)(7). There is no evidence that Blessings received consideration of reasonably equivalent value in exchange for the unsecured, non-interest-bearing loan provided to ADAB Mexico. *See id.* at § 44-1004(B)(8). Blessings was arguably insolvent before, and likely insolvent shortly after, the transfers. *See id.* at § 44-1004(B)(9).

With respect to A.R.S. § 44-1004(A)(1), Plaintiff has established a likelihood of success in proving that Blessings did not receive a reasonably equivalent value in exchange for the equipment and cash transferred to ADAB Mexico, and that Blessings transferred assets at a time when it believed or reasonably should have believed it would incur—and, indeed, had already incurred—debts beyond its ability to pay as they became due.

Plaintiff has also established serious questions going to the merits of its claim under A.R.S. § 44-1005. The evidence indicates that Blessings transferred cash to ADAB Mexico after it had incurred debts to OG, and the evidence is sufficient to raise serious questions as to whether Blessings was insolvent at the time of the transfers or became insolvent as a result of them. *See id.*

Plaintiff has established a reasonable likelihood of success in obtaining judgments in the UFTA Action against David and Abraham because, as co-owners of Blessings and ADAB Mexico, they are "person[s] for whose benefit" the transfers from Blessings to ADAB Mexico were made. A.R.S. § 44-1008(B)(1).

### B. Irreparable Harm

"[A] district court has authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment." *In re Est. of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1480 (9th Cir. 1994). If Plaintiff were to obtain a judgment in the full amount that it seeks in its operative Complaints, or even half that amount, the evidence indicates that Defendants would be unable to pay the judgment. Furthermore, as discussed above, Plaintiff has established a likelihood of success in proving that Blessings and David have engaged in a pattern of secreting assets to Mexico. Accordingly, the Court finds that Plaintiff has shown that it would suffer irreparable harm in the absence of preliminary injunctive relief.

### C. Balance of Equities

With an appropriately crafted injunction, the balance of equities tips sharply in Plaintiff's favor. The potential harm to Plaintiff—inability to collect on a judgment if it succeeds on the merits of its claims against Defendants—is significant. However, the Court agrees that a preliminary injunction should not have the effect of preventing Defendants from paying legitimate business expenses, personal expenses, legal fees, and existing obligations such as the criminal fine owed to the United States government and the loan owed to National Bank of Arizona. Accordingly, the Court will craft an injunction intended to allow Defendants to continue to make legitimate payments but to enjoin Defendants from secreting assets beyond the reach of creditors.

### D. Public Interest

"When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009) (internal quotation omitted). However, the Court notes that the secretion of assets beyond the reach of creditors undermines the public interest favoring the payment of commercial debts and

1 | civil judgments. Accordingly, the public interest factor is either neutral or in favor of an appropriately crafted preliminary injunction in this case.

### E. Bond

"The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). District courts are "afforded wide discretion in setting the amount of the bond." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003). Defendants aver that they would be injured by a preliminary injunction prohibiting them from selling assets in order to pay ordinary expenses, legal fees, and existing obligations. However, the record does not contain sufficient information from which this Court could reasonably estimate Defendants' potential damages. Furthermore, the Court will craft an injunction intended to minimize the potential harm identified by Defendants. Accordingly, the Court will require a bond of only $5,000.

**IT IS ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. 149) is **granted as follows**:

1. Absent notice and further Order of the Court, David Mayorquin, Abraham Mayorquin, and Blessings, Inc. are restrained from causing (directly or indirectly) or participating in the disposition of any ownership or security interest in (1) Blessings, Inc.'s real property at 1045 S. Highland Ave., Tucson, Arizona; (2) Blessings, Inc.'s real property at 6520 N. Thornydale Rd., Tucson Arizona; (3) David Mayorquin's real property at 2901 E. Calle Sin Pecado in Tucson, Arizona; (4) Abraham Mayorquin's real property at 7989 W. Ironwood Ct. in Tucson, Arizona. Notwithstanding this preliminary injunction, David Mayorquin, Abraham Mayorquin, and Blessings, Inc. may consummate a transaction involving the four aforementioned properties on satisfaction of the following conditions: (1) the transaction is with a person with whom Defendants have no direct or

|  |  |
|---|---|
| 1 | indirect (past or present) personal, familial, financial, or professional relationship, and (2) the proceeds of the transaction are held in escrow by Defendants' attorneys, net of closing expenses payable to persons with whom Defendants have no direct or indirect (past or present) personal, familial, financial, or professional relationship. |

2. Absent notice and further Order of the Court, David Mayorquin, Abraham Mayorquin, Blessings, Inc., and ADAB Ocean Harvest, S. De R.L. De C.V. are restrained from causing or allowing the disposition of any other assets owned by them, except for the payment of ordinary living expenses for David Mayorquin, Abraham Mayorquin, and their dependents; payments made in the ordinary course of business; payments of legal fees; and payments on obligations owed to the United States and National Bank of Arizona, N.A.

3. This preliminary injunction shall have no effect on the existing rights of National Bank of Arizona, N.A., or the United States.

4. Pursuant to Federal Rule of Civil Procedure 65(c), Plaintiff shall post a bond in the amount of $5,000.00.

Dated this 27th day of September, 2019.

_____
Honorable Rosemary Márquez
United States District Judge