**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ocean Garden Products Incorporated, | No. CV-18-00322-TUC-RM |
| Plaintiff, | Consolidated with:<br>No. CV-19-00284-TUC-RM |
| v. | |
| Blessings Incorporated, et al., | **ORDER** |
| Defendants. | |

Pending before the Court is Pacific Ocean Harvest, S. De R.L. De C.V.'s ("Pacific Ocean") Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 299.) Plaintiff Ocean Garden Products, Inc. ("OG") filed a Response on January 23, 2020 (Doc. 319), and Pacific Ocean filed a Reply on February 3, 2020 (Doc. 323). For the following reasons, the Motion to Dismiss will be denied.[1]

**I.    Background**

This litigation began in July 2018, when OG initiated a lawsuit against Blessings, Inc. ("Blessings") and David Mayorquin ("David") in case number CV-18-322. (Doc. 1.) OG later initiated a separate lawsuit alleging claims under Arizona's Uniform Fraudulent Trade Act ("UFTA") against numerous defendants, including Pacific Ocean and Abraham Mayorquin ("Abraham"), in case number CV-19-284. (Doc. 1 in CV-19-284) (the "UFTA Action"). After case numbers CV-18-322 and CV-19-284 were consolidated, OG filed a First Amended Complaint in the UFTA Action ("UFTA FAC").

---

[1] The Court finds that the Motion is suitable for resolution without oral argument. Accordingly, Plaintiff's request for oral argument (*see* Doc. 319 at 1) is denied.

1 (Doc. 154.) Pacific Ocean moved to dismiss for lack of jurisdiction the claims asserted against it in the UFTA FAC. (Doc. 157.) In an Order filed on October 25, 2019, this Court granted Pacific Ocean's Motion to Dismiss but gave OG leave to file a Second Amended UFTA Complaint ("UFTA SAC"). (Doc. 239.) OG filed its UFTA SAC on November 25, 2019. (Doc. 260.)

## II. Allegations of UFTA SAC

OG's UFTA SAC makes the following allegations with respect to Pacific Ocean:

In 2014, brothers David and Abraham conducted a shrimp business predominantly through Blessings, purchasing shrimp from vendors (primarily OG), processing the shrimp at Blessings' Tucson facility, and reselling the processed shrimp to Blessings' customers. (Doc. 260 at ¶¶ 2, 70.) While concealing the existence of a criminal investigation that posed an existential threat to Blessings' business, the brothers "embarked on a campaign to get as much cash and shrimp as possible for Blessings from OG, while systematically transferring Blessings' assets" to a Mexican entity named ADAB Ocean Harvest, S. De R.L. De C.V. ("ADAB Mexico"), thereby isolating the debts of their shrimp business in Blessings and their assets in ADAB Mexico. (*Id.* at ¶¶ 2-5, 18.) Beginning in or around September 2015, the brothers transferred Blessings' shrimp processing business to ADAB Mexico and terminated Blessings' shrimp processing operations in Tucson. (*Id.* at ¶¶ 86-89.)

After the criminal investigation became public in 2017, David and Abraham set up Pacific Ocean—a Mexican entity with premises in Nogales, Sonora—to take over the shrimp processing business of ADAB Mexico, and they set up ADAB Ocean Harvest LLC ("ADAB Tucson") to take over the shrimp sales business of Blessings. (*Id.* at ¶¶ 6-8, 19, 127-128.) Pacific Ocean processes shrimp from the same building occupied by ADAB Mexico in Nogales, Sonora, and purchases shrimp from Blessings' former suppliers. (*Id.* at ¶¶ 128-129.) Although Abraham is nominally the 99% owner of Pacific Ocean—thus creating an "illusion that David and Blessings have been separated from the business"—David is still an equitable owner of the company, attending a meeting for

Pacific Ocean in October 2019 and directing the preparation of deal terms on Pacific Ocean letterhead using Abraham's signature. (*Id.* at ¶¶ 130-131, 140-144.) As a result of "the brothers' cross-border corporate shell game, Blessings is insolvent and judgment-proof," while ADAB Mexico and Pacific Ocean "are operational and apparently profitable" primarily thanks to cash, equipment, and intangible assets fraudulently transferred from Blessings. (*Id.* at ¶¶ 9-10.)

OG asserts that jurisdiction over Pacific Ocean is proper because the entity "is owned by Abraham and is not a good faith transferee of assets David and Abraham fraudulently transferred to it from Blessings (both directly and through ADAB Mexico)." (*Id.* at ¶ 25.) Sometime after January 2018, Blessings transferred possession of IMMEX equipment to Pacific Ocean, which has been using the equipment to process shrimp since at least March 2018 and has not paid Blessings anything for its possession or use of the equipment. (*Id.* at ¶¶ 137-139.) Pacific Ocean also leases equipment from ADAB Mexico under an insider lease. (*Id.* at ¶ 153.) In addition to equipment transfers, David and Abraham transferred Blessings' supplier relationships to Pacific Ocean, without any contracts being signed concerning the transfer and without Blessings receiving any value from Pacific Ocean in exchange for the transfer. (*Id.* at ¶¶ 145, 149-150.) Finally, David and Abraham transferred Blessings' shrimp-processing techniques, which Defendants have claimed are trade secrets, directly to Pacific Ocean in exchange for no consideration. (*Id.* at ¶¶ 151-152.) Blessings made the transfers of IMMEX equipment, supplier relationships, and shrimp-processing trade secrets to Pacific Ocean "with the actual intent to hinder, delay or defraud Blessings' creditors, including OG," and Pacific Ocean did not receive the transfers in good faith. (*Id.* at ¶¶ 177-180, 189.) At the time of the transfers, OG had a claim against Blessings; Blessings was insolvent or became insolvent as a result of the transfers; and Blessings "did not receive reasonably equivalent value in exchange" for the transfers. (*Id.* at ¶¶ 177, 187-188.) David, Abraham, ADAB Mexico, Pacific Ocean, and ADAB Tucson conspired to orchestrate the transfers in violation of the UFTA. (*Id.* at ¶ 196.)

### III. Legal Standard

"Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017). Arizona's long-arm statute permits the exercise of jurisdiction to the full extent permissible under the United States Constitution. Ariz. R. Civ. P. 4.2(a); *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989). In order for the exercise of personal jurisdiction over an out-of-state defendant to comport with the requirements of due process under the United States Constitution, the defendant must "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation omitted).

The plaintiff bears the burden of establishing that the exercise of personal jurisdiction is proper. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). This is true even though the defendant is the moving party on a Rule 12(b)(2) motion to dismiss. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). But in the absence of an evidentiary hearing, the plaintiff need only make "a prima facie showing of personal jurisdiction." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation omitted).[2]

Personal jurisdiction can be general or specific. General personal jurisdiction exists when the defendant's affiliations with the forum state are so "continuous and systematic" that the defendant can properly be said to be "at home" in that state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation omitted). A corporate defendant is typically "at home" only in its state of incorporation and the state in which it has its principal place of business. *See id.* at 924. Specific personal jurisdiction exists when "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277,

---

[2] The plaintiff must later establish the jurisdictional facts by a preponderance of the evidence at a preliminary hearing or at trial. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

284 (2014). Three requirements must be satisfied for a court to exercise specific personal jurisdiction over a non-resident defendant: (1) the defendant must have "purposefully direct[ed] his activities or consummate[d] some transaction with the forum or resident thereof" or "purposefully avail[ed itself] of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws"; (2) the claim must have arisen out of or relate to the defendant's forum-related activities; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). If the plaintiff meets its burden of showing sufficient minimum contacts to satisfy the first two requirements for exercising specific personal jurisdiction, the burden then shifts to the defendant to "present a compelling case that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (internal quotation omitted).

In evaluating a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court is not restricted to the four corners of the Complaint and may consider extrinsic evidence, including affidavits and discovery materials. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (per curiam), *abrogated on other grounds by Daimler AG v. Bauman*, 571 U.S. 117 (2014). Uncontroverted allegations of a complaint must be taken as true. *Ranza*, 793 F.3d at 1068. Factual disputes are resolved in the plaintiff's favor. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

**IV. Discussion**

Pacific Ocean asks the Court to dismiss the claims asserted against it in the UFTA SAC for lack of personal jurisdiction, without further leave to amend. (Doc. 299 at 12-13.) Pacific Ocean argues that jurisdiction is lacking because "any and all actions or supposed transfers took place solely in Mexico, where it is undisputed that Pacific Ocean solely operates." (Doc. 323 at 3-7, 12.) Pacific Ocean also argues that it pays fair market value to lease equipment from ADAB Mexico, and that neither supplier relationships nor Abraham's knowledge of shrimp-processing techniques are assets that can be transferred in violation of the UFTA. (Doc. 299 at 3-11.)

Pacific Ocean is not incorporated in Arizona, does not have its principal place of business in this state, and does not have affiliations with Arizona that are so continuous and systematic as to establish general personal jurisdiction. *See Goodyear Dunlop Tires Operations*, 564 U.S. at 919. Accordingly, the Court turns to the question of specific personal jurisdiction.

In resolving Pacific Ocean's prior Motion to Dismiss OG's UFTA FAC, the Court analyzed whether Pacific Ocean is subject to specific personal jurisdiction under the "effects" test of *Calder v. Jones*, 465 U.S. 783 (1984). (Doc. 239 at 6-7.) Under that test, a defendant purposefully directs conduct at a forum state by (1) committing an intentional act, (2) "expressly aimed at the forum state," (3) that causes "harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (quoting *Dole Food*, 303 F.3d at 1111). "Harm sufficient to establish personal jurisdiction may be felt in multiple forums," and harm from a plaintiff's inability to collect on a judgment is felt in the location of the action as well as the residence of the plaintiff. *Best Western Int'l, Inc. v. I-70 Hotel Corp.*, No. CV11-1281-PHX-FJM, 2012 WL 2952363, at *4 (D. Ariz. July 19, 2012). Accordingly, as this Court has previously found, interfering with a creditor's ability to obtain a collectable judgment against Blessings in a court in Arizona constitutes harm felt in Arizona. (*See* Doc. 217 at 10.)

OG's UFTA SAC alleges the direct transfer from Blessings to Pacific Ocean of IMMEX equipment, supplier relationships, and shrimp-processing trade secrets. However, the UFTA SAC also alleges that Blessings transferred its shrimp-processing business to ADAB Mexico beginning in 2015, and that the shrimp-processing business was subsequently transferred to Pacific Ocean. (*See* Doc. 260 at ¶¶ 6-8, 86-89, 127-128.) Furthermore, the IMMEX equipment documents attached to the UFTA FAC and to OG's Response to Pacific Ocean's Motion to Dismiss appear to indicate that the equipment at issue was imported by ADAB Mexico, primarily in the 2012-2014 time-frame, prior to the existence of Pacific Ocean.[3] (*See* Doc. 260-4; Doc. 319-8; *see also* Doc. 319-3

---

[3] Some equipment appears to have been imported by ADAB Mexico in 2018. (*See* Doc. 260-4 at 28-32; Doc. 319-8 at 29-33.)

(incorporation documents indicating Pacific Ocean was incorporated in 2018.)[4] Based on the IMMEX equipment documents, other evidence in the record, and the allegations of the UFTA FAC itself, it appears that equipment, supplier relationships, and shrimp-processing techniques were transferred from Blessings to ADAB Mexico, and then subsequently transferred from ADAB Mexico to Pacific Ocean.

OG argues that whether assets were transferred directly from Blessings to Pacific Ocean or through an intermediary such as ADAB Mexico is irrelevant to whether Pacific Ocean, as a subsequent transferee under A.R.S. § 44-1008(B)(2), is subject to jurisdiction. (Doc. 319 at 9.) Under Arizona's UFTA, "to the extent a transfer is voidable in an action by a creditor" the creditor may obtain a judgment against either "[t]he first transferee of the asset or the person for whose benefit the transfer was made," or "[a]ny subsequent transferee other than a good faith transferee who took for value." A.R.S. § 44-1008(B)(1)-(2). And as this Court has previously found, under the *Calder* effects test, intentionally accepting fraudulently transferred assets for purposes of interfering with a creditor's ability to obtain a collectable judgment in a court in Arizona constitutes conduct purposefully directed at Arizona for purposes of specific personal jurisdiction. *See Schwarzenegger*, 374 F.3d at 803; *Best Western Int'l*, 2012 WL 2952363, at *4. Accordingly, even if Pacific Ocean is merely a subsequent transferee of assets that were originally transferred from Blessings to ADAB Mexico, and even if the transfer of those assets from ADAB Mexico to Pacific Ocean occurred only in Mexico, specific personal jurisdiction may exist over Pacific Ocean.

In granting Pacific Ocean's prior Motion to Dismiss OG's UFTA FAC, the Court noted that the evidence in the record at that time indicated, at most, that Blessings directed the transfer of assets to ADAB Mexico and that Pacific Ocean later leased from ADAB Mexico equipment that had been transferred to ADAB Mexico from Blessings. (Doc. 239 at 6.) The Court found that, even if it were to assume that Pacific Ocean did

---

[4] The IMMEX equipment documents and the Pacific Ocean incorporation documents are written in Spanish, and neither party has provided the Court with a translation of the documents.

- 7 -

not pay fair market value for its use of equipment leased from ADAB Mexico, the circumstances were "too tenuous to support a finding that Pacific Ocean knew that its mere use of the equipment would likely cause harm to creditors seeking to collect from Blessings in Arizona." (*Id.* at 7.) The new allegations of the UFTA SAC strengthen OG's position that specific jurisdiction exists over Pacific Ocean under the *Calder* effects test. OG now alleges that critical aspects of Blessings' shrimp-processing business—including equipment, supplier relationships, and shrimp-processing trade secrets—were transferred from Blessings to Pacific Ocean (either directly or through ADAB Mexico as an intermediary), without Pacific Ocean providing Blessings with reasonably equivalent value for the transfers.

Pacific Ocean argues that it pays value to lease shrimp-processing equipment from ADAB Mexico, relying on an affidavit filed in support of its prior dismissal motion. (Doc. 299 at 3, 5, 7-8.) In that affidavit, Abraham asserted that Pacific Ocean "pays fair market value to ADAB Mexico" for its use of certain equipment. (*See* Doc. 24-1 at 5 in CV 19-284.) However, the affidavit does not provide any specific facts to support the conclusory assertion that Pacific Ocean pays fair market value to lease the equipment, and Defendants have not identified any evidence showing the amount paid by Pacific Ocean. *See Activator Methods Int'l, Ltd. v. Future Health, Inc.*, No. CV-11-1379-PHX-GMS, 2012 WL 715629, at *4-5 (D. Ariz. Mar. 6, 2012) (finding self-serving conclusory assertion in affidavit insufficient to contradict factual assertions of complaint). Furthermore, the UFTA SAC alleges that the IMMEX equipment is separate and distinct from the equipment leased by Pacific Ocean from ADAB Mexico (Doc. 260 at ¶ 153), and Pacific Ocean has presented no evidence to contradict that allegation. Uncontroverted allegations in the UFTA SAC "must be taken as true" for purposes of a dismissal motion resolved without an evidentiary hearing. *Dole*, 303 F.3d at 1108.

Pacific Ocean further argues that Abraham's knowledge of shrimp-processing techniques is not an asset that can be transferred in violation of the UFTA. (Doc. 299 at 4-5, 10-11.) However, this argument is inconsistent with Defendants' position—taken in

other contexts in this litigation—that Blessings' shrimp-processing techniques are trade secrets. (*See, e.g.*, Doc. 251 at 5.) Intangible property rights and interests, such as trade secrets, can be fraudulently transferred in violation of the UFTA. *See Arizona ex rel. Indus. Comm'n of Ariz. v. Wright*, 43 P.3d 203, 206 (Ariz. App. 2002).

The parties also dispute whether supplier relationships are assets that can be transferred in violation of the UFTA. (*See* Doc. 299 at 4-5, 8-10; Doc. 319 at 13-15; Doc. 323 at 8-12.) In arguing that such relationships are assets for purposes of the UFTA, OG relies upon *Powertech Tech., Inc. v. Tessera, Inc.*, No. C 11-6121 CW, 2014 WL 171830 (N.D. Cal. Jan. 15, 2014) and *Odyssey Reinsurance Co. v. Nagby*, No. 16-cv-03038-BTM-WVG, 2019 WL 2868928 (S.D. Cal. July 2, 2019). (Doc. 319 at 14-15.) In *Powertech*, there was evidence that the UFTA defendant transferred a customer relationship that "represented a large percentage" of its business. 2014 WL 171830, at *11. In *Odyssey*, the UFTA defendant transferred "at least 75% of its most valuable resource," which was its business relationships with insurance brokerage firms. 2019 WL 2868928, at *4-7, 9-10. It is not clear that the allegedly transferred supplier relationships at issue here had value equivalent to the value of the customer and broker relationships at issue in *Powertech* and *Odyssey*. Nevertheless, the Court finds that OG's allegation that Pacific Ocean is not a good-faith transferee of Blessings' supplier relationships, when considered in conjunction with OG's allegations that Pacific Ocean received shrimp-processing trade secrets and possession of shrimp-processing equipment without giving reasonably equivalent value in exchange, are sufficient to establish a prima facie case of specific personal jurisdiction.

By allegedly transferring tangible and intangible shrimp-processing assets from Blessings to Pacific Ocean (either directly or through ADAB Mexico), Defendants were able to continue to profit from their shrimp-processing business operations while leaving Blessings insolvent and judgment-proof, thus frustrating the ability of creditors such as OG from collecting on Blessings' debts in courts in Arizona. Given Defendants' overlapping ownership, OG has sufficiently shown—for purposes of a jurisdictional

dismissal motion resolved without an evidentiary hearing—that Pacific Ocean knew that its receipt of tangible and intangible shrimp-processing assets would interfere with creditors' ability to collect from Blessings in Arizona, thus satisfying the purposeful direction requirement of specific personal jurisdiction pursuant to the *Calder* effects test. OG's claims against Pacific Ocean arise out of that purposeful direction, and Pacific Ocean has not presented "a compelling case that the exercise of jurisdiction would" be unreasonable. *Schwarzenegger*, 374 F.3d at 802 (internal quotation omitted); *see also Dole Food*, 303 F.3d at 1111. Accordingly, OG has established a prima facie case of specific personal jurisdiction over Pacific Ocean.[5]

**IT IS ORDERED** that Pacific Ocean's Motion to Dismiss the UFTA SAC (Doc. 299) is **denied**.

Dated this 18th day of February, 2020.

_____
Honorable Rosemary Márquez
United States District Judge

---

[5] OG will later be required to establish the facts supporting personal jurisdiction by a preponderance of the evidence at a preliminary hearing or at trial. *Data Disc*, 557 F.2d at 1285.